WEARE C. LITTLE et al., Respondents, v. A. BLEECKER BANKS, Appellant.

Under the provision of the statute (§ 2, chap. 224, Laws of 1848 *) providing for the publication of the reports of decisions of the Court of Appeals " by contract to be entered into by the reporter, secretary of State and comptroller with the person or persons who * * * shall agree to publish and sell said reports on terms the most advantageous to the public," the officers named have power to impose terms beneficial to the public, which are not in violation of any established rule of law ; they may make provision in the contract that a party injured by a refusal of the contractor to sell and deliver as prescribed by the contract shall be entitled to recover damages, and may fix a sum as liquidated damages.

A contract so entered into required the contractor to furnish at the contract-price any volume published under it to any other law-book-seller in the city of New York or Albany applying therefor, " in quantities not exceeding one hundred copies to each applicant," unless the contractor should choose to deliver more. The contract also provided that for any failure on the part of the contractor " to keep on sale, furnish and deliver " the volumes, or any of them, as agreed, he should " forfeit and pay * * * the sum of $100 hereby fixed and agreed upon, not as a penalty but as liquidated damages, * * * to be sued for and recovered by the person or persons so aggrieved." Plaintiff, a book-seller, applied to defendant, the contractor, on six different occasions, for a number of copies required by him in his business, of certain volumes published under the contract, tendering the contract-price, which defendant refused to deliver. In an action upon the contract, held, that the State officers named had the power to impose the terms specified ; that in the absence of proof it could not be assumed that the provision for sales to law-book-sellers was not advantageous to the public ; that direct evidence of damage was not required but was to be presumed; that it was for the purchaser, not for the contractor, to determine the number of copies within the limits of the contract to be furnished ; that the sum specified was not a penalty

* See Code of Civil Procedure, § 211.

but stipulated damages ; and that the plaintiff could maintain the action, and was entitled to recover the damages specified for each refusal, with interest.

(Argued March 22, 1881 ; decided May 3, 1881.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 13, 1880, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 20 Hun, 143.)

The nature of the action and the facts are sufficiently stated in the opinion.

*Rufus W. Peckham* for appellant. Plaintiff being a third party and not privy to the contract or the consideration could not maintain this action. (*Garnsey* v. *Rogers*, 47 N. Y. 233, 240 ; *Vrooman* v. *Turner*, 69 id. 280, 284, 285 ; *Simson* v. *Brown*, 68 id. 355 ; *Railroad Co.* v. *Curtiss*, 80 id. 219 ; *U. S.* v. *Maurice*, 2 Brock. 109.) An estoppel does not operate in favor of a stranger. (*Mayenborg* v. *Haynes*, 50 N. Y. 675 ; *Muller* v. *Pondir*, 55 id. 325, 334.) The sum expressed in the contract, though spoken of as liquidated damages, was in reality a penalty, and the court erred in giving judgment for the amount without any proof of the extent or character of the damages suffered, or without proof indeed that any damage at all was suffered. (*Colwell* v. *Lawrence*, 38 N. Y. 71 ; *Lampman* v. *Cochran*, 16 id. 275 ; 2 Bos. & Pul. 351 ; *Kemp* v. *Ice Co.*, 69 N. Y. 45, 57–59; Sedgw. on Damages [5th ed.], 481 ; *Richards* v. *Edick*, 17 Barb. 260 ; *Salters* v. *Ralph*, 15 Abb. Pr. 273 ; *Dennis* v. *Commons*, 3 Johns. Cas. 297 ; *Staples* v. *Parker*, 41 Barb. 648 ; *Beal* v. *Hayes*, 5 Sandf. 640.)

*E. Countryman* for respondents. An agreement made on a valid consideration, by one with another, to pay money to a third, can be enforced by the third in his own name. (*Lawrence* v. *Fox*, 20 N. Y. 268 ; *Secor* v. *Law*, 4 Abb. Ct. of App. Dec. 188 ; *Van Schaick* v. *Third Ave. R. Co.*, 38

N. Y. 346; *Ricard* v. *Sanderson*, 41 id. 179; *Burr* v. *Beers*, 24 id. 178; *People* v. *Holmes*, 5 Wend. 191; *Dutton* v. *Poole*, 3 Bos. & Pul. 149, note *a; Schermerhorn* v. *Vanderheyden*, 1 Johns. 139; *Coster* v. *Mayor of Albany*, 43 N. Y. 399, 410, 411, 412; *French* v. *Donalson*, 57 id. 496; S. C., 5 Lans. 293; *McMahon* v. *Second Ave. R. Co.*, 75 N. Y. 231; *Arnold* v. *Nichols*, 64 id. 117; *Claflin* v. *Ostrom*, 54 id. 581; *Thorp* v. *Keokuk Coal Co.*, 48 id. 253; *Little* v. *Gould*, 2 Blatchf. 165, 362.) A contractor assuming the performance of a public duty, either by express or implied contract, although there is no special undertaking for the benefit of third persons, is nevertheless liable in a civil action to any person sustaining an injury peculiar to himself, from the non-performance of such duty. (*Robinson* v. *Chamberlain*, 34 N. Y. 389, 393, 396, 402; *Weet* v. *Brockport*, 16 id. 161, note 163; *Fulton Ins. Co.* v. *Baldwin*, 37 id. 648; *Johnson* v. *Belden*, 47 id. 130, 131; *Brooklyn* v. *Brooklyn R. Co.*, id. 476; *McMahon* v. *Second Ave. R. Co.*, 75 id. 231; *Conroy* v. *Gale*, 5 Lans. 344.) The same rule applies to public officers and corporations. (*Robinson* v. *Chamberlain*, 34 N. Y. 389, 393, 398; *Hover* v. *Barkhoof*, 44 id. 113, 116, 123; *McCarthy* v. *Syracuse*, 46 id. 194; *Clark* v. *Miller*, 54 id. 528; *Connors* v. *Adams*, 13 Hun, 427.) Defendant is estopped from denying the validity of the contract. (*Hathaway* v. *Payne*, 34 N. Y. 109.) The language of the contract, under the circumstances in which it was used, must be construed as a liquidation of the damages. (*Cotheal* v. *Talmage*, 9 N. Y. 551; *Baglie* v. *Peddie*, 16 id. 469; *Clement* v. *Cash*, 21 id. 253; *Noyes* v. *Phillips*, 60 id. 408; *Kemp* v. *Knickerbocker Ice Co.*, 69 id. 46, 58.) The plaintiffs were entitled to recover interest from the time of the breach. (*Walden* v. *Sherburne*, 15 Johns. 409; *Patterson* v. *Choate*, 7 Wend. 441; *Van Rensselaer* v. *Jewett*, 2 N. Y. 135; *McMahon* v. *N. Y. & E. R. Co.*, 20 id. 463; *Clark* v. *Miller*, 54 id. 528.)

MILLER, J. This action was brought to recover damages sustained by the plaintiffs, as law-book-sellers, for an alleged

refusal of the defendant to sell and deliver to them certain copies of the volumes of the New York Reports, published by the defendant. The contract of the defendant with the State officers who were authorized to make the same provided, among other things, that the defendant should at all times keep the volumes published for sale at retail, at the price named, in one or more law-book-stores in the city of Albany, and the city of New York, and it declared : " And should any other law-book-seller, in either of said cities, apply to purchase any of said volumes, the same shall be supplied to such law-book-seller upon application, in quantities not exceeding one hundred copies to each applicant, unless said party of the second part shall choose to deliver a greater number when applied for, which he shall be at liberty to do, and the said party of the second part shall thereupon, at intervals not exceeding ten days, furnish the said law-book-sellers copies of any of said volumes when required, in quantities not exceeding fifty volumes at a time." It also provided that " the said volumes shall be published and kept for sale as aforesaid, at the price of $1.10 per copy, and shall be simultaneously placed on sale in each of said book-stores in the cities of New York and Albany, and as to the time when copies of said volumes, or any of them, may be purchased, there shall be no discrimination in favor of or against any person desiring to purchase the same, but they shall be supplied to all alike in the manner hereinabove provided." The contract further declared, that the State officers should be at liberty to abrogate and annul the same for any default or failure to fulfill, and for a breach of any of its terms or conditions the defendant should forfeit and pay to the people of the State the sum of $5,000, which was " agreed upon, not as a penalty but as fixed, stipulated and liquidated damages suffered by the people aforesaid, to be sued for and recovered by the attorney-general   *   *   * in the name and for the benefit of the said people." It was also further agreed that for any failure on the part of the defendant " to keep on sale, furnish and deliver the aforesaid volumes, or any of them, at the price and as hereinabove provided," the defendant " shall forfeit and pay   *   *   *   the

sum of $100, hereby fixed and agreed upon, not as a penalty but as the liquidated damages suffered by the person or persons aggrieved thereby, the same to be sued for and recovered by the person or persons so aggrieved." The plaintiffs applied on six different occasions for copies of some of the volumes published at the book-store of the defendant, and demanded the same, and the defendant refused to furnish the same, and the plaintiffs bring this action for six different sums of $100 each, by reason of such refusals.

The first question presented upon this appeal is as to the right of the State officers to execute the contract in question, and to impose the terms contained therein and which constituted a part of the same. The statute (3 R. S. [6th ed.], 188, § 44) declares, that the reports shall be published "by contract, to be entered into   *   *   *   with the person or persons who   *   *   *   shall agree to publish and sell the said reports on terms the most advantageous to the public;" and it is made the duty of the State officers, before entering into any contract, " to receive and consider all proposals for the publication of said reports which may be made to them." The power conferred was with a view of promoting the public interests, and the officers named were vested with authority to impose such terms as would be most beneficial, and as would not be in conflict with any established rule of law. To promote the free circulation of the reports, it was deemed advisable that the law-book-sellers, referred to in the contract, should have an opportunity to purchase the same with reasonable restrictions. With this view the provision in their behalf was inserted in and made a part of the contract, and was, no doubt, for their benefit. To the plaintiffs especially, who were the owners of a number of previous volumes of the New York Reports, and who as law-book-sellers were especially interested in disposing of the entire series to the public, they were of great importance. If the State officers were empowered to contract, they clearly had a right to make provisions in the contract by which the reports published should be sold to the public, as well as to the law-book-sellers, who were engaged in that kind

of business, according to the conditions and the price named in the contract, and that the party injured by a refusal to sell and deliver should be entitled to damages. And if such right existed, then there was no objection to inserting in the contract some provision fixing the amount which should be recovered upon a failure to sell and deliver the reports as the contract provided. While there is no positive statute which authorizes the State officers to fix a sum as liquidated damages for a breach of the contract, inasmuch as they have the power to make such a contract as would be advantageous to the State, it necessarily follows that they have a right to impose such reasonable provisions as would carry out this purpose. Whether such amount should be regarded as in the nature of a penalty or as liquidated damages will be hereafter considered.

The effect of the contract was that, in consideration of doing the work, the defendant would sell and deliver the books, as provided, to the persons who were entitled thereto, and if he failed to do so as required, when demanded, he would pay, to the person injured, the damages. The rule is well settled by the decisions of the courts of this State, that an agreement made for a valid consideration by one party with another to pay money to a third can be enforced by such third person in his own name. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Coster* v. *The Mayor*, 43 id. 399; 52 Barb. 276; *French* v. *Donaldson*, 57 N. Y. 496; 5 Lans. 293.) Contractors with the State, who assume, for a consideration received from the sovereign power, by covenant, express or implied, to do certain things, are liable, in case of neglect to perform such covenant, to a private action at the suit of the party injured by such neglect, and such contract inures to the benefit of the individual who is interested in its performance. (*Weet* v. *Vil. of Brockport*, 16 N. Y. 161, note; *Robinson* v. *Chamberlain*, 34 id. 389; *Fulton Fire Ins. Co.* v. *Baldwin*, 37 id. 648; *Johnson* v. *Belden*, 47 id. 130; *City of Brooklyn* v. *Brooklyn City R. R. Co.*, id. 476; *McMahon* v. *Second Ave. R. R. Co.*, 75 id. 231; *Conroy* v. *Gale*, 5 Lans. 344.) The ground upon which these decisions are founded is a broad principle of public policy essential to the public wel-

fare (34 N. Y., *supra*), and we are unable to perceive why the doctrine last stated, without invoking the rule laid down in *Lawrence* v. *Fox* (*supra*), is not applicable to a contract of the description of the one in controversy, where the officers enter into it for the advantage and the welfare of the public, and where such a provision constitutes a material portion of the agreement which is essential to carry it into effect.    Within some of the adjudications in this State already cited, if the plaintiffs have been injured by a violation of such a contract, no reason exists why an action would not lie on their behalf against the defendant for the recovery of damages. (See, also, *Arnold* v. *Nichols*, 64 N. Y. 117; *Claflin* v. *Ostrom*, 54 id. 581.)

We have given due consideration to the criticism of the learned counsel for the appellant upon the decisions referred to, but we are unable to discover any such distinction between some of the cases cited and the one at bar, as would authorize a holding that the State officers had no authority to make a contract for the benefit of the plaintiffs, and others who desired to purchase the reports, which would authorize an action to recover damages in favor of a party injured by a failure to perform.    The plaintiffs certainly had a special interest in the contract, which was provided for, and it is difficult to see why they had not the same remedy as in the cases cited, where provision has been made for the benefit of a third person which entitled such person to maintain an action for a breach of the contract.

The counsel for the defendant insists that the provision in favor of the law-book-sellers of two cities is not an exercise of the power to contract, as given by the statute, and as would be most advantageous to the public.    There might perhaps be some force in this position if it was apparent that the effect of carrying out such a provision would not be advantageous to the public.    But, with the inferences to be derived from the facts presented, that the purchasers of the reports are accommodated by means of these instrumentalities, it cannot be assumed, we think, that the provision in their behalf was not in

conformity with the statute under which the contract was made. If the demand made by the plaintiffs was beyond what was required for the ordinary sales to purchasers, or was in any way speculative, extravagant or unreasonable, an action to recover the amount fixed perhaps could not be maintained, and circumstances showing that such was the case would be a good defense to an action brought to recover damages for a violation of this condition of the contract. The provision in the contract that the defendant should " keep the said volumes for sale at retail " must be interpreted in connection with that which requires a supply to law-book-sellers on demand, in quantities not more than one hundred volumes ; and hence there is no conflict in this respect.

The counsel for the defendant also insists that, in order to establish a cause of action in favor of a party, some injury must be sustained as a matter of fact, and proof must be given to show that such injury has been done. We think that direct evidence was not required, and, from the fact of a violation of the contract, it is to be presumed that the party sustained a loss, either by an absolute failure to sell to his customers, because he could not obtain the reports, or by being compelled to seek elsewhere for the same books, and perhaps to pay a higher price, if possibly he could thus procure them. In cases where liquidated damages are fixed, and are not to be regarded as a penalty where there is a failure to perform a material part of the contract, the presumption of law is, that damages were sustained, and the party thus injured is not compelled to establish by evidence the various items of damage as in other cases. The fact that the contract made provision for a forfeiture of a fixed sum to be paid the State for damages, in case of a breach of any of its terms or conditions, cannot interfere with, or affect the right of, an aggrieved party to recover the damages fixed for a failure to sell and deliver the reports named, in accordance with the terms of the contract.

It is also insisted that the sum expressed in the contract, although stated as liquidated damages, was in reality a penalty, and the court were in error in rendering a judgment without

proof of the extent and character of the damages suffered, or that any damage at all was suffered. The question presented has been the subject of frequent consideration in the courts, and considerable embarrassment has been experienced, where contracts contained severe and inequitable provisions, in an effort to reconcile the principles of justice with the well-settled rule that every person has the right to make such a contract as he chooses, and that the courts are bound to enforce it. The difficulty referred to has led to the adoption of the rule that, in the construction of such a provision, the actual intention of the parties, so far as it can reasonably and fairly be ascertained from the language of the contract, and from the nature of the surrounding circumstances of the case, is to be considered. (*Colwell* v. *Lawrence*, 38 N. Y. 71; *Cotheal* v. *Talmage*, 9 id. 551; *Noyes* v. *Phillips*, 60 id. 408; *Lampman* v. *Cochran*, 16 id. 275.) This intention cannot be entirely determined by the use of the word " penalty," or of the words " liquidated damages." (*Colwell* v. *Lawrence*, *supra*; *Staples* v. *Parker*, 41 Barb. 648; *Beale* v. *Hayes*, 5 Sandf. 640.) Nor is the word " forfeit" conclusive (*Noyes* v. *Phillips*, *supra*) as to such intention. It must be arrived at in view of the circumstances of each particular case.

The question recurs, then, did the parties intend by this contract to fix a given sum to be paid on a failure to perform? The breach provided for was a single one — a failure to keep on sale, furnish and deliver the volumes named at a price fixed. The agreement expressly provides that the sum named is fixed and agreed upon " not as a penalty." The failure to sell and deliver embraced not only a single volume, but might be one hundred volumes at one time. The damages for a failure to deliver a single volume might be very small, while for a larger number it would be far greater; and, in case of a book-seller disposing of them in the course of his trade, might be beyond the amount actually fixed. The damages for a single breach were also uncertain, and could not be determined without extrinsic evidence, and without some embarrassment. The mere loss of profits on a volume to a book-seller might also be of but

trifling amount when compared with the injury to his trade by being unable to furnish, to his customers, volumes of the reports as required. Under the circumstances it is easy to see that there would be considerable difficulty in making proof of the actual damages incurred. In view of the facts, although the question is by no means free from embarrassment, it is, perhaps, a fair inference that the parties actually intended to guard against these difficulties by fixing the amount named in the contract as liquidated damages. As the damages, which might possibly be incurred by a failure to supply a larger number of copies provided for by the contract, might be greater, we think the amount was not unreasonable, or grossly disproportionate to the probable estimate of actual damages. (*Cotheal* v. *Tallmage, supra.*) While, in some cases, the amount might be beyond the damages which would actually be incurred, in others it would not be excessive or exorbitant.

The claim that the determination of the quantities to be furnished rests with the defendant, under the contract, and that he has not violated any of its terms, is not well supported. The provision that the books are to be supplied to the law-book-seller, "upon application, in quantities not exceeding one hundred copies to each applicant," evidently means that the applicant can fix the number of volumes to the amount of one hundred copies, and that the defendant, if he chooses, may deliver a larger number if applied for.

We think that the plaintiffs were entitled to recover interest from the time of the breach. The damages were liquidated as of that time, and, being then due, the amount drew interest as upon a liquidated claim. Had it been otherwise, it would not have drawn interest for that reason ; but being fixed and settled by the contract, the damages stand in the same position as any other debt which is past due. ( *Walden* v. *Sherburne*, 15 Johns. 409; *Patterson* v. *Choate*, 7 Wend. 441 ; *Clark* v. *Miller*, 54 N. Y. 528.)

The judgment was right, and should be affirmed.

All concur; except RAPALLO, J., absent, and ANDREWS, J., not voting.

Judgment affirmed.