ANNA MARIA HOWELL AND OTHERS, RESPONDENTS, v. THE LONG ISLAND RAILROAD COMPANY, APPELLANT.

*Conditional conveyance of land — what will not be treated as a substantial compliance with the condition — when a sum named as damages will be treated as such and not as a penalty.*

The plaintiffs' predecessors in title conveyed a portion of a large tract of land on Long Island owned by them to the railroad company, defendant herein, to be used as the site of a passenger station. The deed was given upon the express condition that the premises should revert in case the defendant should cease to use them as a regular passenger station as therein provided. It also contained a covenant binding the company, its successors and assigns, to erect, within a reasonable time, a respectable station on the land conveyed, and to forever keep and maintain the same as a regular daily stopping place for not less than two trains daily in each direction, "under the penalty of $3,500, which is hereby agreed between the parties as the liquidated damages for the substantial non-performance of this covenant."

The defendant erected the depot and then stopped its trains which ran from Long Island City to Greenpoint as required by the deed until 1876. At that time it leased a road running from Long Island City to Whitestone, which ran through or near the plaintiffs' lands, and upon which was a station, distant about 1,000 feet from the one built upon the land conveyed to the defendant. At this station the trains were stopped from fourteen to nineteen times a day. After acquiring this lease the defendant ceased to stop its trains at the old station.

In an action, brought by the plaintiff to recover the possession of the land con-
veyed because of the failure of the defendant to comply with the terms of the
conditions, and also to recover damages for the breach thereof:

*Held,* that the stopping of the trains at the station upon the leased road was not
a substantial compliance with the terms of the conditions contained in the
deed from the plaintiffs.

That the sum of $3,500 specified in the covenant was to be treated as liquidated
damages and not as a penalty.

APPEAL by the defendant from so much of a judgment in favor
of the plaintiffs as awards damages to the plaintiffs. The judgment
was entered upon the report of a referee.

The action was brought: 1st. To recover certain premises upon
the ground that there had been a breach of the condition contained
in a deed of conveyance thereof from the plaintiffs to the defend-
ant; and, 2d, to recover damages upon an alleged breach of a cov-
enant in the same deed.

For many years prior to 1860 the plaintiffs' predecessors in
title were owners of a large tract of land in the town of New-
town, county of Queens. In that year, the defendant being
about to construct a railroad from Jamaica to Hunter's Point,
through this property, purchased of plaintiffs' predecessors a small
plot of land, containing about one-quarter of an acre for depot
purposes. The deed was conditioned that the premises should
revert, if not used for depot purposes, and also contained the follow-
ing covenant : " And the said parties of the second part, for them-
selves, their successors and assigns, do hereby covenant that they
will erect, within a reasonable time, at a cost of not less than $500,
a respectable station-house on the lot of land hereby conveyed, and
forever keep and maintain the same as a regular daily stopping
place (Sundays excepted) for not less than two trains daily in each
direction, under the penalty of $3,500, which is hereby agreed
between the parties as the liquidated damages for the substantial
non-performance of this covenant."

Shortly thereafter the defendant built its road, constructed the
depot and proceeded to operate its railroad. No claim is made of
any breach of this covenant until the year 1876.

In or about the year 1869 the Flushing and North Side Railroad
Company built a railroad from Hunter's Point to Flushing, College
Point and Whitestone, running parallel with defendant's road from

Hunter's Point through plaintiffs' property at Woodside, and established its depot at Woodside, about 1,000 feet distant from the defendant's depot, which was on plaintiffs' southerly boundary line. In 1876 defendant leased the Flushing and North Side Railroad, and thereupon discontinued the stoppage of trains at its old depot, but operated its trains, varying from fourteen to nineteen trains daily each way, over the other road stopping at the other Woodside station.

The referee found that defendant's failure to maintain the original depot was a substantial non-performance of its covenant, and that plaintiffs had been damaged thereby in the sum of $3,500 for which sum he gave judgment.

*Edward E. Sprague*, for the appellant.

*J. Ralph Burnett*, for the respondents.

BARNARD, P. J.:

The question of the substantial performance of the contract in question depends upon two things. The plaintiffs' predecessors in title owned a large tract of land about three miles from Hunter's Point, upon the Long Island Railroad. There was a station a mile away, at Whinfield. To obtain daily facilities to get to and from this land, a deed was given to the Long Island Railroad Company, and the company accepted the deed with the condition that there should be a passenger station built on the lot, and that at least two trains each way should daily stop thereat for passengers, and that if the company failed to maintain the station the land should revert, and this was "under the penalty of three thousand five hundred dollars, which is hereby agreed between the parties as the liquidated damages for the substantial non-performance of this contract." Under this deed the defendant took possession of the land, and built the passenger depot and literally fulfilled the contract for a time, and then ceased to do so. The defendant's road extends from Long Island City to Greenpoint, on Long Island sound, in Suffolk county, with numerous and extensive lateral connections. Among other roads operated by it was the Flushing and Woodside Railroad, which extended from Long Island City to White Stone. This road runs through or near the lands of the plaintiffs, and had a station about 1,000 feet from the old station. The defendant ceased

to stop at the old station on its road and stopped its trains at the other station on the leased road, and a far greater number of trains daily than was called for by the contract with the plaintiff. Is the station not upon the land, but so near that it fairly accommodates all persons who do or can live upon the plaintiffs' land a substantial performance of the covenant while kept as it is? Is such maintenance of a station under the circumstances of this case a substantial performance of the covenant with the plaintiffs, even if the station does equally well accommodate passengers to and from New York?

The answer to each question should be adverse to the defendant. The covenant applied to the plaintiffs' land and can be performed in no other place fully. The defendant's road, with which the contract was made, was a road of very much greater scope and significance than the short road. To go from the new station by this road east, the traveler must first go to Hunter's Point, a distance of three miles, and then again start by the defendant's road. There is some proof in the case that the old station is for the special advantage of the plaintiffs' lands as against the new station. The parties had the right to contract to suit themselves, and a court should give proper weight to that fact. Finally, the defendant is not bound to the plaintiff to keep even the new station at all for any given time. It is for its interest to do so at present, but it may move it or discontinue it. A covenant with the plaintiff is not answered by a performance in another place and with no guaranty of continuance. It seems to me, therefore, that there is not only no substantial performance but a complete non-performance as to this covenant. The case does not fall within the cases cited. Generally, these cases arise in actions upon contracts for building and like contracts. If the performance is substantial and the defect can be made good with money, the action is upheld and justice done by compensation for defects. (*Heckmann* v. *Pinkney*, 81 N. Y., 211; *Woodward* v. *Fuller*, 80 id., 312, and *Nolan* v. *Whitney*, 88 id., 648, are such cases.) If this covenant had fallen short in size or cost of station or in time of construction, it might have presented a case to be tried as substantially performed. The land is surrendered and all liability to keep a station on it is abandoned.

Upon the question of whether the covenant was one for a penalty

or was designed to liquidate the damages, this is the difficulty experienced in all cases of this kind. The use of the word penalty does not necessarily make it a penalty, and the use of the words liquidated damages does not conclusively establish that it was not a penalty created by the covenant. In this case, both words are used, and the case must be determined by the surroundings of the contract and by the evidence. The failure which constituted the basis of damages was single, and actual damage would be hard to prove. The Court of Appeals give weight to this consideration in *Little* v. *Banks* (85 N. Y., 258). Under this case, I think this covenant was intended to, and did, make a sum which was to be deemed the actual damage for a breach. The proof, however, fully supports the finding that damage was actually suffered in excess of the sum named in the covenant. The plaintiffs' lands are shown to have depreciated nearly or quite half in value, by reason of the removal of the station. While this is disputed by the defendant's witnesses, there is no reason why an appellate court should disagree with the finding.

Judgment affirmed, with costs.

DYKMAN and PRATT, JJ., concurred.

Part of judgment appealed from affirmed, with costs.